We are now recording. Hear ye, hear ye. This Honorable Appellate Court for the Second Judicial District is now back in session, the Honorable Robert D. McLaren presiding. Your Honors, the second case on the docket this afternoon is 2-22-0103, the People of the State of Illinois Plaintiff Appellant v. Robert A. Cox, Defendant Appellee. Arguing for the appellant, Mr. Max C. Boos. Arguing for the appellee, Ms. Geneva L. Penson. Thank you. Mr. Boos, you may proceed. Thank you, Your Honor, and may it please the court, counsel. The sole issue in this case is whether the trial court properly granted the motion to suppress in this case, and for the under the circumstances, the manner of this search was reasonable under the Fourth Amendment. The court failed to use the proper standard of totality of the circumstances, instead substituting its own per se rule. And lastly, its analysis showed its reasoning and result was improper, and therefore, remand is necessary. Mr. Boos, did, oh, I'm sorry, Justice, did not Ms. Officer Converse indicate that he knew that there was contraband in the defendant's buttocks or whatever you want to say. He indicated that he thought or he knew it was contraband. So how does that justify continuing the search? When it's a Terry soft and you're searching for weapons, you are searching for the safety of the officers. So a protective search for weapons does not equal a search for contraband, does it? I agree, it does not. The sole evidence that investigator Converse was aware prior to the contraband, I believe, was a reference to him having it cuffed. That was just from defendant whose testimony was held to be fundamentally tainted, and that credibility determination is a manifest weight standard. And therefore, that evidence does not go to whether this search was proper. The credibility determination says that that is not a valid basis to dispute his search. Moreover, his possession or previous involvement with narcotics and that knowledge uniquely adds to the basis for the search for two reasons. First of all, the subjective motives are not what is, I'm sorry, Your Honor, I believe you may have asked some questions, but you may be muted. I was just having problems with my camera, but I'm good. I've heard everything you said. You didn't see me. Very good. The subjective knowledge of the officer does not go to undermining the search in this case. First of all, his subjective motivations or what he's trying to do doesn't answer the question of whether under the totality of the circumstances to determine the safety of those present, there should be a search. The trial court made a finding, and one of the minutia relative to supporting that finding was that the officer, as Justice Shostak pointed out, was looking for contraband or thought that there was contraband, and that was possibly or probably a reason for the search. So, how, when the trial court makes findings of fact, you have to establish, number one, that it's against the manifest weight insofar as the historical facts are concerned, and then you're supposed to persuade us to decide de novo whether the judge was correct or incorrect. How do you address, why do you say that the intent of the officer doesn't support, because that's the implication of your argument, that it's irrelevant and it can't support the findings of the trial court? Your Honor, the subjective intent of the officer isn't what resolves the legal question of if the search was appropriate. Now, there was a finding by the trial court that the officer was acting on this hunch, a term not appearing in the record and one that was not supported by any evidence other than defendant's testimony, which, again, was found to be not credible. So, therefore, there's no weight of evidence in its favor. Moreover, that testimony relates to him acting on this hunch, that testimony, or that finding, rather. That goes to why the officer searched that location. The trial court functionally went backwards from the location of the search and then said, I think this officer was just trying to find contraband, when the question is, was this search appropriate? So, getting into... So, how was the search appropriate? Why was this defendant even there? He just happened to be in the area where a search warrant was being executed, right? Your Honor, the evidence shows that he had an existing relationship with the location of the area. He had been seen in the location moving objects into and out of that location. The fact that later there was evidence that it may have been food didn't change the analysis during the search that he was there, he had been there, and that he was moving objects around when the search was done. During the pat-down, Your Honor. And when did it end? If you're referring to the Terry search and the search... I'm referring to when it did the contraband, when was it seized? It was recovered in the police station, Your Honor, after he was relocated a couple of times. This officer safety pat-down covered from the time that the officer put his hands on the defendant until after he went through a scanning machine and they shook him down, I believe literally, they shook him such that the contraband finally fell out of his buttocks. Is that correct? Your Honor, I'd respectfully disagree. The search for officer safety justified by Terry went until the defendant seized up and attempted to frustrate the search while on the scene immediately after Investigator Converse made initial contact with the item. The two reasons why that was no longer a Terry issue or justified by Terry was, one, the defendant attempting to frustrate the search and therefore adding to the officer's knowledge, and two, the plain feel that the officer had of contraband. So you're saying that when they arrested him and then do the search to extract whatever was between his buttocks? Yes, Your Honor, specifically because the item was known by plain feel to be contraband and also defendant's actions in attempting to frustrate the search. But he didn't get arrested when he was taken to the police station, did he? He was not arrested for anything. Your Honor, I believe at that point he was still detained pending further investigation. No, this can't in any way be a search subject to an arrest. We're not there. He's not cooperating. He's seizing up. He goes through a body scan. It's clear we don't have a weapon there because you don't see any outline or any shadow of a everybody now thinks it's some sort of contraband, correct? Investigator Converse testified he immediately on plain feel identified it as contraband. So that would be the only distinction, Your Honor, is that his uncontradicted testimony and the trial court made no findings against this in its order, just to be clear. But then the scanner was then that there was some item supporting the probable cause that, again, was established when defendant attempted to defeat the search and the plain feel occurred. I guess I'm not sure why they had to use the scan. If if Converse was so sure before they when they got to the Aurora Police Department, why did they even go to Kendall County? He knew what he was looking for. Yes, Your Honor, but explosives. Pardon me. Go ahead. The reason that Converse provided was that he knew that he had something and he needed to show defendant or he didn't need to, but he expressed that they use this in part to show defendant, hey, there's something there. We know it's their machine said it's there. And therefore, you know, let's just get out of there and sort it out. The fact that this scanner was used to try to have defendant relinquish the item does not control whether or not there was there was probable cause of the. He didn't consent to go get scanned, though, did he? No, Your Honor. OK. You know, I'm having a in the beginning. The pat down that included the swipe with a bladed hand that had any. Any presence between defendants buttocks was a Terry search that is OK. And so then he found no weapon during that search. That's correct. So then how is he justified and then taking him someplace else now to continue the search? When the Terry search commenced at its at its very beginning, there was not probable cause. There is not a reason to retrieve anything from between defendants buttocks when he conducts the search to the exterior of defendant and encounters an object that by plain feel he identifies as contraband. That is when the situation changes from. OK. Counsel, you said that this was a Terry stop, and I believe a Terry stop has two elements in it. One is is that there has been a crime that may have been committed and that you have reason to believe that the defendant or the person to whom you're the police officer is addressing himself to was the perpetrator or was involved in that offense. Isn't that what a Terry stop is? It's based on some articulable suspicion. And in this instance, the officers, when they drove up. Handcuffed everybody outside the house. The record, I believe, reflects that this person was not a subject of the search warrant. And so this wasn't even a Terry stop because at the time this was done for officer safety. They were handcuffed and made to sit on the ground so as to not present a danger to the police officers. And it was done presumptively because there is no probable cause to believe that these people were either armed or that they were dangerous. Is that correct? This was just for officer safety. Your Honor, I would disagree with the last point that there was no reason to believe that any of the individuals present could pose a threat, specifically citing Michigan v. Summers, the United States Supreme Court case that largely was relied on by the trial court. Specifically, it stated the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence or frantic efforts to conceal or destroy evidence. I have no problem with that definition. The question is, our people outside the house who aren't named in the search warrant necessarily affiliated with that presumption or supposition. They're expressly included. You don't have to be the target of a search warrant for Michigan v. Summers or other cases in order to, while present at that location, to be considered a risk of harm. When they were handcuffed, were they padded down? Specifically to defendant, that was the search that Converse was. The others who are present were also handcuffed and padded down, to my knowledge. So there were two pat-downs, you're saying, correct? Not of a defendant, Your Honor. I'm referring to the other individuals who were also present. So they padded down everybody but the defendant? No, Your Honor. They padded down the defendant too, didn't they? Investigator Converse, as part of his pat-down, included a search of any area between defendant's buttocks giving rise to this. Did he pat down any of the other people who were shackled? Yes, others who were detained in the driveway were padded down. So you're basically saying that when they were detained and they were shackled, they were not padded down? No, Your Honor. The people who were detained in the driveway were placed in handcuffs and padded down. But they weren't padded down. They were all padded down but they didn't get the knife swipe, if you will, correct? Oh, and it seemed like you inaccurately answered my question, which was, I thought I asked, was he padded down twice? Once by the officer that put the handcuffs on and once by Officer Converse? No. I understand your question now, Your Honor. May I have time to answer the question and any other questions we have? Thank you. Of course. Here, defendant, the testimony from the officers was generally not, the officers who were not Converse stated, I didn't pat him down. Converse testified, yes, I patted him down. When I patted him down, I included this swipe. There was not evidence in the record, to my recollection, of an initial immediate pat down from the testimony. I apologize if that conflicts with any of your recollection. Any other questions? No. Okay, I'm curious. You said when he patted down the defendant, he included the swipe. Is a swipe on a, like a side in a restaurant, like a rotten potatoes or a wedge of lettuce? Is it something that is in addition to a pat down or is it part and parcel of a pat down or weapons? Your Honor, it was included as part of the pat down in one of the locations where the officer believed weapons may be concealed, particularly by those involved with the narcotics trade. And, never mind. Thank you. I have no further questions. You'll get an opportunity to make a rebuttal. Thank you. Ms. Penson, is that how you pronounce it? You're off. You're muted. Here we go. Yes, Your Honor. Geneva Penson for the appellee. May it please the court. To answer Your Honor's question of whether Mr. Cox was pat down once or twice, Mr. Cox testified unequivocally that he had been pat down already by another officer when Officer Converse came out of the house and pat him down again. So, the answer, according to Mr. Cox's testimony, is that he was pat down twice. Now, the other officers, other than Converse, testified that they didn't pat Mr. Cox down initially, and they didn't see anyone else pat him down. But that was generally true. Even when Officer Converse began his pat down of Mr. Cox, the officers generally said they didn't see that pat down until, I guess, some loud voices drew their attention to it. So, there is evidence in the record from Mr. Cox that he was, in fact, pat down twice. Although, it seems that the trial court rejected that factually. Now, excuse me, Detective Converse was, I think he sort of held himself out in his testimony as a narcotics officer. Maybe he was, maybe he wasn't. Maybe that was his primary. But did he know your client's identity before this particular situation, or was this the first time that they had met, or is that not in the record? I believe he testified, and I, unfortunately, I can't point you to the page in the record, that he did know who my client was prior to this. And if he is, and if he's a narcotics officer, there is a reasonable inference that it was because of prior narcotics activity? I believe, I believe the record supports that at least he suspected my client of prior narcotics activity. But there was nothing in the record that he had observed my client engaged in any prior narcotics activity. But his observations, I believe, Officer Converse's observations about my client, that he believed him to be engaged in prior narcotics activity, that he at some point thought that he knew my client, I think goes to his subjective intention to try to look for contraband drugs on my client's person. Not only that knowledge that he thought he had about my client, but also if you take a look at Officer Converse's testimony on pages 171 to 172 of the record, he did say that he had some experience with people hiding narcotics between their butt cheeks, and that he's, that's a common place where people hide narcotics, and that at least 100 times he had recovered narcotics from between someone's butt cheeks. Didn't he also say he previously recovered weapons from people's butt cheeks? He did say that he had, he did say that people sometimes hide weapons in their butt cheeks, I believe was his exact testimony. Your, Mr. Booth cites people versus Robinson, which is a federal case. Nonetheless, how can you distinguish that of the case here? Besides the fact that it's not binding precedent on this court, it's a federal case. In Robinson, we have a very brief encounter with that defendant. There are about seven minutes between the time that the officers began to pat down the defendant in Robinson, and the time that they find and pull a bag of crack out of that defendant's butt cheeks. First of all- Who pulled them out? Did the police officer? It was a police, it was a police officer. Yes, it was a police officer in Robinson. Well, yes, it was a police officer in Robinson who pulled a bag of crack out of that defendant's butt cheeks. But just to distinguish Robinson- I thought there were two women there that eventually pulled that out of there. Am I wrong? There were two women, in my recollection of Robinson, there were two women who were on the scene watching the officers and interfering with the officer's search of the defendant in that case. They were becoming agitated, they were interfering. But on Robinson page, I believe it's page 805 to 806, they're detailing the pat down of the search in that case. And it was a police officer, Officer Pulver, it says, who ultimately detected a hard object between Robinson's butt cheeks and put on latex gloves and pulled out a bag containing crack cocaine. But again, the officer in that case, there's no evidence, at least presented in the Seventh Amendment, that the officer put his hands between Mr. Robinson's butt cheeks in order to feel a hard object. It just says that he detected a hard object. He detected a hard object. So we don't know if that object was protruding out and he somehow felt that object during his open hand search of Mr. Robinson. We don't know. But in this case, we certainly know that Officer Converse put his hands, his two hands together in a bladed fashion and slid them between Mr. Cox's buttocks from the crotch to Mr. Robinson's back. Converse himself testified that that is how he felt that hard object when he was between Mr. Robinson's buttocks. And that testimony from Converse is on page 183, 199, and 201 of the record. So several times it is said by Officer Converse that he slid his hands between Mr. Robinson's buttocks and Mr. Robinson's buttocks. And that is how he was searching. And I think this is important because the state's brief seems to imply that, although not necessarily the argument here today, the state's brief seems to imply that somehow Officer Converse felt this object before he intruded into Mr. Cox's buttocks. And the state argues extensively that there was no intrusion into Mr. Cox's body parts. But in fact, there was. It's right there on the record. Perhaps there was no testimony by Converse that he penetrated Mr. Cox's anus, but that's not necessary here. He admitted repeatedly that he in fact placed his hands between Mr. Cox's buttocks. And in doing so, Mr. Cox argues and the trial court agreed that he exceeded the permissible scope of a pat down for weapons that he claimed to be conducting in this case. But he did not have... Ms. Penson, three hours later when this all occurs, how can we still be in a Terry mode? I mean, he's been in two as a matter of fact. Well, Your Honor, I guess what I'm saying is the search became invalid the moment the officer exceeded his authority under the Constitution. Under the Constitution there on the scene, he had only the constitutional authority to search for weapons, not to intrude into any part of Mr. Cox's body. Once he did more than that, he violated the Constitution. So the subsequent searches, and again, yes, you're right, it was three hours of driving Mr. Cox around, more than three hours of driving him around to different locations and searching him. So once they're on the scene, Officer Converse intruded into Mr. Cox's buttocks, the searches, the pat downs, they're no longer valid. They are a constitutional violation, a violation of Mr. Cox's Fourth Amendment rights. But you're right, the officer didn't stop there. He left the scene, took Mr. Cox first to the Aurora Police Station, and then to the Kendall County Jail, where he was subject to a body scan. And then back to the Aurora Police Station, where he was subject to a strip search without consent. Let me just clarify one thing, although I'm pretty sure I know the answer. He was detained to the Aurora Police Department. Then Kendall County Sheriff's Department, then back to Aurora. Was the Kendall County trip, did he consent to that trip? No, he did not. Did he consent to the strip search? No, he did not. Okay. He did not consent to any search in this case. All right. Thank you. Now, the state has repeatedly, repeatedly argued that this officer's subjective intent was completely irrelevant. And while certainly this is a totality test at which no single factor is necessarily dispositive, the officer's objective intent is in fact relevant under the totality of the circumstances test. And that is something that our Supreme Court has stated in People v. Galvin. It's cited in the briefs. In that case, and this is a direct quote from Galvin, the Supreme Court said the testimony of an officer as to his subjective feelings is one of the factors which may be considered in the totality of circumstances known to the officer at the time of the frisk. So, it is wrong for the state to argue that Officer Converse's subjective intent or feelings is totally irrelevant. It's not under the law. And again, it seems that the officer's subjective intent here, as I've already discussed, was to look for contraband and not only to detect a weapon, a weapon between Mr. Cox's butt cheeks. What would have happened, in your opinion or your what-if brain, if the detective had headed down the defendant and claimed that he found a weapon in the buttocks? And when I say a pat down, I mean what the words mean. Pat, you went like this. I'm talking about this. That's a pat down, okay? Or this is a pat down with the back of the hand. What if the officer had said or did an actual pat down and come up with the claim that he felt a weapon? And certainly that has happened in some of the cases, I think, which are cited in the state's officer detected a hard object between Mr. Cox's buttocks without intruding into his buttocks. I don't, I can't say necessarily, well, I can't say necessarily that that would have justified further intrusion right on the spot or that that would have provided probable cause right on the spot because we still don't know or we don't know if the officer in that circumstance would have been able to immediately identify that object as a weapon or as contraband. If he thought it was a weapon, then I think perhaps that leans toward the officer being able to explore further. However, if it's contraband that he's thinking it was and couldn't identify it as contraband, I don't think that, I'm not sure that I can say a further search would have been warranted. Is it implied in the trial court's determination that the scope of the search was beyond a pat down? Does that weigh in either or factor in any direction, either yes or no, as to whether or not the officer reasonably could have believed that this was a weapon? I don't think it's implied. I think it's explicitly stated in the trial court's ruling that this search exceeded a pat down. If you look at the common law record at pages 105 and 106 of the common law record at page 126, which is in the court's ruling on the state's motion to consider, the trial court said pretty explicitly that this search exceeded the scope of a pat down. In fact, the basis of the trial court's ruling was that it believed this search was more like a search incident to arrest. That sort of search must be supported by probable cause and not simply supported by the need to ensure officer safety or supported by Terry. Thank you. Any other questions? Can I answer your Honor's question? Okay. Sue, no? Thank you. Mr. Booz, you may proceed with your rebuttal. Thank you, Your Honor. In this case, as to the question whether this was the kind of search to locate a weapon, the people have established through citation to law that the types of weapons we're looking for can include razor blades that can be found in back pockets. So the type of search here does comply with a search for weapons as contemplated by Terry. Aren't you well beyond that? I mean, look at Minnesota v. Dickerson that Ms. Penson cited. How do you distinguish that case from this case? I mean, is it not the same case? That was a- Manipulating, trying to find it, moving stuff. I mean, they brought that, the drugs down his pant leg. I mean, how is this not like Minnesota v. Dickerson? And now, aren't you trying to bootstrap your arguments on that weren't argued down below? No, Your Honor. The retrieval of the item is all after the search that is the critical point in time for the motion to suppress. The trial court said by searching between the buttocks in any way that exceeds Terry per se rule, it is not allowed. And therefore, since that goes beyond Terry, then we're done. While the court may have reviewed other facts, the court ultimately departed from the totality of circumstances analysis to just land on if you search in this beyond the scope of Terry when you're three hours later, where is the concern for your safety at that point when you're transferring this guy back and forth to try and see what's in his buttocks? Again, Your Honor, the actions that occurred after the search on the driveway, which were the basis for the trial court's ruling on the motion to suppress, that is all informed by probable cause from attempting to defeat the search on the driveway and by the plain field. And by reviewing the trial court's orders specifically, it is making the determination this motion was granted due to the search on the driveway. From reviewing that, the trial court multiple times talks about this specific moment of the search, the swipe, as it were. And by disregarding the totality of circumstances and saying this exceeds Terry, this type of search, the manner in which it was done, it's no longer doing that totality of the circumstances. And that was shown by its review of Robinson when it talked about how even though Robinson talks about this item being gripped between the defendant's buttocks and a search necessarily being involved there, at the end of the day it says, well, it doesn't say enough about the Robinson search. And moreover, I'm just finding that this is beyond the scope of Terry anyways. So first of all, it erred by not properly analyzing Robinson, which did include facts that there was a search between the buttocks. But more importantly, it didn't conduct the kind of analysis it needed to for this search. But in the Robinson case, which by the way is a federal case, not binding on us, there was a pocket knife that was showing, wasn't there? There were other... Yeah. So you were actually beyond Terry at that point. The problem with the court's analysis is that it didn't care about other information available at the scene. It just said, this type of search is not okay. I don't know exactly what happened in Robinson, but as a matter of law, if you search the area between the buttocks, then it goes beyond Terry. But you said that the trial court didn't take into consideration what was going on at the scene. What do you mean? What did the court not take into consideration? The trial court noted the proper standard, the totality of circumstances, it reviewed the facts, and then ultimately it ruled solely on whether or not this type of search can exist under Terry. And it said that it can. But your police officer at the hearing testified that he knew that it was contraband, he was feeling for contraband. Why at that point, how was that for his safety at that point? Are you referring to the knowledge that people who traffic in narcotics may hide contraband or weapons there? Right. Yes. So that informed his knowledge. And that testimony actually relates to Galvin very well, if I may, Your Honor. You may. So that shows under Galvin that his testimony informed the totality of the circumstances because he knew and told the court he knew that this location was considered an area to conceal items from the police, and more importantly, where weapons were concealed, a fact which was not analyzed by the trial court despite it noting that this testimony was presented. He never offered any testimony and nobody ever asked any testimony. He said, oh, I've discovered weapons in the buttocks before. There was never any testimony about that. I mean, never any questions about that. Whose burden was it to bring that out, not the trial courts? Investigator Converse presented the testimony that he had located weapons in the location searched. That testimony was not challenged, and that was the evidence before the court. Therefore, the record was developed in excess of, for example, the USV look case cited by defendant where there was no evidence, there was no reason presented for why the location was searched. Here it was. Converse said, I have found weapons here. I know that people involved in narcotics use this place to conceal. And so here that that evidence was present. Did the officer testify that he found weapons in that location with a pat down or with a knife wedge search? I don't believe he got that specific. I know he was questioned on whether he had retrieved weapons from that area, and he said yes. And assuming arguendo that he found weapons when he did a pat down, why would he then need, if he found weapons in that location with a pat down, why would he need to invoke the use of the knife wedge in order to determine whether or not there were weapons there? Because your honor, the the term pat down is is not codified as the only sole means of conducting the search. There cannot be a manipulation of the body. There cannot be a manipulation of the item that you come into contact with. The people fully agree with that. However, they can, there's not a an angle of the officer's arm that is prescribed under the law for it. And therefore, so long as the officer on the exterior of defendant's clothing is conducting a pat down, which does not manipulate, then it is appropriate under tear. So what you're, if I understand the extrapolation of your argument is anything that doesn't tear, cut, or rip the clothing is, is not an intrusion? No, your honor. The the court and the parties, I believe, agree, at least in the briefing per defendant's brief at number 18, there was no insertion into defendant's body. That is obviously a very important change to the privacy versus safety considerations that underlie Terry. This search was, I'm sorry, go ahead, Justice. I believe what was agreed to was that the anus was never penetrated and possibly never touched. But I don't know that there was an agreement that the knife wedge didn't intrude between the folds of the buttocks that are supposed to protect the anus from the elements. The term from defendant's brief, at least was that converse never penetrated Cox with his hands. So that's what I'm referring to. I have no other questions. Any other questions? No, thank you. Thank you. If I may just briefly add one thing, your honor. On what? If I may clarify one brief point. Go ahead. Just that when referring to the second pat down evidence before, I intended to refer to there's no evidence from the officers that there was a second pat down and that the only evidence that there was was the testimony found not credible by the court. Just for candor to the whatever, whatever type of search it was, it was very specific and very invasive, was it not? You're referring to the driveway swipe, correct, your honor? Yes. I mean, whether it was a second pat down or whatever type of search it was, it was a very specific search. And it was very intrusive. It was specific to the location that the officer knew weapons could be concealed in. And your honor, no more intrusive or sensitive than searches of the genitals or other areas that are sensitive, but that have been struck by tearing its progeny to be appropriate to confirm officer safety. Any other questions? No, thank you. Mr. Booz, you said razor blade might've been put between the box. Did you mean a straight razor? I'm referring to the razor blade cited in the case from my brief where razor blades are considered a weapon under Terry and appropriate for searching for them. That if I misspoke, that's what I intended to say. Well, do you know the difference between a razor blade and a straight razor? Yes, your honor. Okay. So was it a razor blade in the other case? Or was it a razor blade, not a straight razor? The term was directly razor blade. Okay. Thank you. I have no other questions. The case will be taken under advisement and disposition rendered in ab time. Thank you for your oral arguments. Thank you. Mr. Marshall, will you please close out? Thank you, your honors.